ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT B. SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
gabriel.martinez2@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FLORENCE FUNG,<br><br>Defendant. | CASE NO. CR 13-00805 CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |

　　The United States respectfully requests that this Court sentence defendant FLORENCE FUNG to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $4,000, a $100 special assessment, and $31,000 in restitution. This sentencing recommendation is based on the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and is consistent with the parties' plea agreement.

/ /

/ /

U.S.' SENT'G MEMO                       1
*United States v. Fung*, CR 13-00805 CRB

# BACKGROUND

Defendant Florence Fung participated in the San Mateo County bid-rigging conspiracy from approximately February 2009 through January 2010. Fung participated in foreclosure auctions sporadically in San Francisco from 2003 to 2006, and after a two year hiatus, resumed attending foreclosure auctions in San Mateo in 2008. Presentence Report (PSR) ¶ 15.

On March 10, 2009, Fung attended an auction for the property 192 Linda Vista, Daly City. Co-conspirator Joe Giraudo approached Fung and asked her about the property. Giraudo then told Fung that the property was spoken for and that she could not bid for it. After examining Fung's cashier's checks to make sure she had sufficient money to bid on the property, Giraudo paid Fung $3,000 to not bid on the property. Fung felt that if she did not accept the payoff, Giraudo would have bid the property up past her limit. PSR ¶ 16.

Fung also paid others not to bid against her. For example, on April 2, 2009, Fung paid co-conspirators Joe Giraudo, Mo Rezaian, Ray Grinsell, and Daniel Rosenbledt $2,000 each to not bid against her at the auction for the property 430 Bonnie Street, Daly City. Fung believed that if she did not pay, they would outbid her. Fung generally felt that if she wanted to buy a property at the San Mateo auctions, she would have to pay this group not to bid against her. PSR ¶ 17.

On December 17, 2013, Florence Fung was charged by information with bid rigging and mail fraud in San Mateo County. Dkt. 1. On February 19, 2014, Fung pleaded guilty and began cooperating with the government's investigation. Dkt. 9. On October 11, 2017, by stipulation Fung withdrew from her original plea agreement and entered a new plea agreement to bid-rigging charges only. Dkt. 36.

Fung's plea agreement reflects her participation in rigging bids for 24 properties in San Mateo and a volume of commerce of $2,907,644. The volume of commerce does not reflect the bid-rigging agreements that Fung made in which she received payoff money. Fung received $31,000 in payoff money for agreeing not to bid on 14 properties. PSR ¶ 18.

/ /

/ /

# ARGUMENT

## A. Sentencing Guidelines Calculations

### 1. Criminal History

In Paragraph 12 of the plea agreement, the parties agree that Fung's Criminal History Category is determined by the Court. Dkt. 36. The PSR calculates Fung's Criminal History Category as I, based on no criminal history. PSR ¶¶ 37-38.

### 2. Offense Level

The PSR calculates the total offense level as 13, consistent with the plea agreement. PSR ¶ 34. This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million, and a downward reduction of two levels for acceptance of responsibility. PSR ¶¶ 25-34. U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1), 2R1.1(b)(2)(A), and 3E1.1(a) (U.S. Sentencing Comm'n 2016).

Under the Sentencing Guidelines, an offense level of 13 and Criminal History Category of I results in a sentence ranging from twelve to eighteen months of imprisonment.

### 3. Fine and Restitution

The PSR calculates a fine range of $29,076 and $145,382, consistent with the plea agreement. PSR ¶ 72; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000). In the plea agreement, the government agreed to recommend a fine between $4,000 and $40,000. Dkt. 36. In conjunction with its custodial recommendation, the government recommends a $4,000 fine. This fine range was initially agreed to by the parties in the original plea agreement, based on the application of the fraud Guidelines, and was carried over to the revised plea agreement.

The government recommends restitution in the amount of $31,000, consistent with the plea agreement. Dkt. 36.

## B. Basis for Downward Departure for Substantial Assistance

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward departure for substantial assistance to the investigation. The government recommends a 30

U.S.' SENT'G MEMO                                                                 3
*United States v. Fung*, CR 13-00805 CRB

percent reduction from the low end of the Guidelines range of twelve months, resulting in a sentence of eight months.

The timing, significance, nature and extent of Fung's cooperation warrant a 30 percent reduction. Fung entered her plea agreement pre-indictment on February 19, 2014, and immediately began cooperating in the investigation. Her plea may have influenced the decisions of defendants who pleaded after her to also plead guilty and accept responsibility.

Additionally, Fung provided a candid interview with the FBI in which she produced and explained her notes regarding certain bid-rigging agreements. During her interview, Fung provided corroborating information regarding the operation of the conspiracy, the conduct of other conspirators, and various bid-rigging agreements. Also during her interview, Fung provided two envelopes to the FBI agent containing $1,670 and $1,667 that she had received from Joe Giruado and Mo Rezaian for participating in bid-rigging agreements. Fung also made herself readily available to the prosecution team in the event she would be needed for further information or potential testimony.

For these reasons, a 30 percent downward departure for substantial assistance to the investigation and prosecution of these cases is appropriate.

**C.     Sentencing Recommendation**

The government's recommendation of eight months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553. The government believes the Court's sentence must reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

Given the magnitude of the financial harm caused by Fung's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the commentary in the applicable Guidelines. The commentary to the Guidelines makes clear that "prison terms for [Antitrust] offenders should be . . . common" and "alternatives such as community confinement [should] not be used to avoid imprisonment of antitrust offenders." U.S.S.G. §2R1.1, cmt. n. 5 & Background. Given Fung's substantial assets, a fine alone—in the absence of a custodial term—would not serve as an adequate deterrent. The foreclosure auctions

were vulnerable to bid rigging, especially in the aftermath of the foreclosure crisis, when the auctions were flooded with investment opportunities. Fung was not a leader or organizer of the conspiracy, but she joined in willingly and was involved in rigging 24 properties while agreeing not to bid on 14 properties. PSR ¶ 18.

The government's recommended sentence also adequately considers the history and characteristics of defendant, including her early decision to accept responsibility, her willingness to pay restitution and cooperate in the investigation, and her lack of prior criminal history.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and sentence defendant Florence Fung to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $4,000, a $100 special assessment, and $31,000 in restitution.

Dated:  April 19, 2018                                    Respectfully submitted,

/s/ GABRIEL MARTINEZ
United States Department of Justice
Antitrust Division